Michael Garth Moore (023742)
9040 North Placita Verde
Tucson, Arizona 85704
Telephone: 888-318-0075
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Greg Moore<br>c/o Michael Garth Moore<br>9040 North Placita Verde<br>Tucson, Arizona 85704 | : <br><br> : <br><br> : |
| and | Case No. |
| Patricia Moore<br>c/o Michael Garth Moore<br>9040 North Placita Verde<br>Tucson, Arizona 85704 | : <br><br> : |
| and | Jury Demand Endorsed Hereon |
| | : |
| Southwest Nonprofit Housing<br>Corporation<br>An Arizona not-for-profit corporation<br>2455 E. Speedway Ste 101<br>Tucson, AZ 85719 | : |
| and | |
| J C Moore Grandchildren's Trust<br>2455 E. Speedway Ste 101<br>Tucson, AZ 85719 | |
| and | |
| ESMJ Partners<br>An Arizona limited partnership<br>2455 E. Speedway Ste 101 | |

Tucson, AZ 85719
                    Plaintiffs,

        -VS-                                    :

Sean Garand, Detective
Jane Doe Garnand, Spouse                        :
Tucson Police Department
270 South Stone Avenue
Tucson, Arizona 85701,

        and
                                                :
Dain Salisbury, Sergeant
Jane Doe Salisbury, Spouse
Tucson Police Department                        :
270 South Stone Avenue
Tucson, Arizona 85701,


        and

Rebecca Lopez, Detective
John Doe Lopez, Spouse
Tucson Police Department
270 South Stone Avenue
Tucson, Arizona 85701,

        and

Richard Radinsky, Sergeant
Jane Doe Radinsky, Spouse
Tucson Police Department
270 South Stone Avenue
Tucson, Arizona 85701,

        and

Kimberly Frie, Sergeant
John Doe Frie, Spouse
Tucson Police Department
270 South Stone Avenue
Tucson, Arizona 85701

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I. INTRODUCTION, PARTIES AND JURISDICTION

1.      Plaintiffs Greg Moore and Patricia Moore are husband and wife;

2.      Plaintiffs, J C Moore Grandchildren's Trust; Southwest Nonprofit Housing Corporation; and ESMJ Partners, are all corporate or partnership entities authorized to do business, and doing business, in Arizona. Hereafter, they are designated "the Companies";

3.      As of June 8, 2017, The Forgeus Apartments were located at 2427-2429 North Forgeus Avenue, Tucson;

4.      At all times pertinent hereto, Defendant Sean Garnand was a Detective employed by the City of Tucson, Arizona, Police Department [hereafter "TPD"], assigned to investigate arson in the city of Tucson. The unlawful actions taken by Defendant, alleged herein, were done in his capacity as a state actor, and were done with malice and/or reckless disregard of the federally-protected rights of the Plaintiffs;

5.      At all times pertinent hereto, Defendant Dain Salisbury was a Sergeant supervisor employed by the City of Tucson, Arizona, Police Department, assigned to oversee investigations of arson in the city. Defendant was the direct Supervisor of Defendant Garnand. The unlawful actions taken by Defendant, alleged herein, were done in his capacity as a state actor, and were done with malice and/or reckless disregard of the federally-protected rights of the Plaintiffs.

6.     At all times pertinent hereto, Defendants Rebecca Lopez and Kimberly Frie were Detectives employed by the City of Tucson, Arizona, Police Department, as a financial crimes investigator.  The unlawful actions taken by Defendants, alleged herein, were done in their capacities as state actors, and were done with malice and/or reckless disregard of the federally-protected rights of the Plaintiffs.

7.     At all times pertinent hereto, Defendant Richard Radinsky was a Sergeant supervisor employed by the City of Tucson, Arizona, Police Department, assigned to oversee investigations of financial crimes. Defendant was the direct Supervisor of Defendant Lopez. The unlawful actions taken by Defendant, alleged herein, were done in his capacity as a state actor, and were done with malice and/or reckless disregard of the federally-protected rights of the Plaintiffs. All Defendants are sued in their individual capacities. These Defendants' spouses are joined to enforce any judgment against community property;

8.     The Court has jurisdiction of this case under federal question jurisdiction, §28 U.S.C. §1331;

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391;

10.     The claims asserted by Plaintiffs are brought to vindicate rights guaranteed Plaintiffs under 42 U.S.C. §1983. Injunctive relief is proper under Fed. R. Civ. Pro. 65;

## II. FACTS

11.     Plaintiffs reallege Paragraphs 1 through 10 as if fully set forth herein;

12.     At all times pertinent hereto, Plaintiff Greg Moore was the President of Territorial Brokers, a company which, among other activities, managed the Forgeus

Apartments under agreement with the owner, Forgeus Apartments, LLC, which itself was

wholly owned by ESMJ Partners;

13.     Neither Plaintiff had any ownership or financial interest in either entity;

14.     On June 8, 2017, fire engulfed both apartments at the Forgeus address,

resulting in total loss of the building. At the time of the fire, both apartment units were

vacant and the "east unit", number 2427, was undergoing renovation;

15.     The Tucson Fire Department [hereafter, "TFD"] responded to a call, and

fought the fire;

16.     TFD fire investigators were called in;

17.     Plaintiff Greg Moore arrived at the scene after he was notified of the fire by a

call from his office. The office had received a call from Plumbing Suppliers, Inc., a

business located nearby;

18.     At the scene, Mr. Moore spoke with TFD investigator Jorge Loya, provided

his name, informed Loya that the property was owned by a partnership, and left the scene

to make contact with the property insurer;

19.     Defendants Garnand and Salisbury were called in by the TFD investigator to

investigate the origin and cause of the fire, after it was discovered that an accelerant was

used to ignite the fire, implicating arson as the cause;

20.     Defendant Salisbury was designated the Incident Commander, and

Defendant Garnand was acting as the principal investigator;

21.    Defendants' investigation at the scene included securing latent fingerprints and possible DNA specimens. The investigation led to Defendants being aware of the following facts:

a.    The fire had been started by arson, the arsonist(s) placing plastic containers filled with gasoline near low level flames, resulting in a delayed ignition;

b.    Greg Moore had come to the scene while TFD was on scene and spoken with TFD investigator Loya, and given his name and phone number, stated that the "east unit" of the property was undergoing remodeling, and that he, Mr. Moore, needed to contact the property insurer;

c.    The property was owned by one of the Plaintiffs, ESMJ Partners;

d.    Greg Moore's phone number was 520-326-4858;

22.    With this information, Defendants conferred and decided to seek a search warrant to (1) enter the building, search, and seize any evidence of arson; and (2) seize from the body of Greg Moore DNA, fingerprints and to also seize all handheld personal devices on Greg Moore's person, vehicles and records of ownership;

23.    Defendant Garnand placed a call to a Superior Court Judge at or about 7:05 p.m., with Defendant Salisbury present and concurring, and secured a telephonic search warrant for the property and to search and seize specific things from Mr. Moore. This search warrant is designated No. 17 SW 1017;

24.    Defendants, before seeking the search warrant did not:

a.    Interview the witnesses at the scene, two of whom were employees of Plumbing Suppliers, Inc., who had reported the fire;

b.     Canvass the neighbors in an attempt to learn of persons or vehicles that may have been at the property in the 24 hours prior to the fire;

c.     Research public records to identify the actual owner of the property;

d.     Put a call into Greg Moore to speak with him;

25.     Later in the evening of June 8th, Salisbury dispatched two officers to Mr. Moore's office located at 2455 East Speedway, Suite 101, but the office was closed for the night. At Salisbury's direction, a call was placed to Plaintiff, who was at his home, and Mr. Moore advised that would be available the next day at his business office;

26.     The morning of June 9th, Garnand "staked out" the Forgeus address, and witnessed a black 2004 model Ford Expedition on the property and a male walk around the building. This person was Tom Alfonso, an independent contractor who performs work for Mr. Moore's businesses, and who is also the President of the General Partner of ESMJ Partners;

27.     When Mr. Alfonso drove away, Garnand alerted other TPD units and directed that the Expedition be stopped. Mr. Alfonso was alerted by a TPD cruiser with lights and siren, and stopped his vehicle near the intersection of South Campbell Avenue and Tucson Market Place Boulevard. Garnand approached Mr. Alfonso, asking him if he was Greg Moore. When Mr. Alfonso corrected Defendant Garnand's error, Mr. Alfonso also informed Garnand that he was at the property at the request of Greg Moore to assess the damage. Garnand searched Mr. Alfonso's Expedition, finding nothing that would incriminate Plaintiffs, either in Mr. Alfonso's statement or in the physical property Garnand searched, Garnand released Mr. Alfonso to go on his way;

28.     At approximately 2:30 p.m. that day, June 9th, two Defendants arrived at
2455 East Speedway Boulevard, Suite 101. Defendant Salisbury was dressed in what
appeared to be "SWAT" attire;

29.     At the time Defendants arrived, Greg Moore was in his office speaking with
James Wadleigh, the attorney who handled unrelated business matters for Mr. Moore;

30.     When they learned that the two TPD detectives were in the reception area,
both Mr. Moore and Mr. Wadleigh stepped out to speak with them;

31.     After Garnand identified himself and began to question Plaintiff, Mr.
Wadleigh advised Plaintiff to remain silent;

32.     At that point, Garnand became visibly annoyed and first informed Mr. Moore
that he had a warrant to seize Mr. Moore's cell phone and obtain evidence from his person;

33.     Mr. Moore reached into the telephone pouch on his belt, pulled out his cell
phone and asked Garnand, "You mean this?"

34.     At that point, Mr. Wadleigh asked Garnand for a copy of the search warrant
so he could review it;

35.     Garnand's response was, "Well, if this is the way you want to play it,"
reached over and pulled the cellphone out of Mr. Moore's hand, grabbed him, spun him
around, and handcuffed him in front of his receptionist and his lawyer. He applied the
handcuffs very tightly to Mr. Moore's wrists, causing extreme discomfort. He then emptied
Mr. Moore's pockets;

36.     He ordered Mr. Moore to sit on a chair in the reception area and exited the office, informing Mr. Moore and Mr. Wadleigh that he was going to retrieve the warrant from his vehicle;

37.     After a period of time, Garnand returned with what appeared to be a warrant authorizing him to take DNA and other personal effects of Mr. Moore. After Mr. Wadleigh read it, Garnand informed Wadleigh that Defendants' original intent was to have the forensics technician come to the business to secure the evidence off Plaintiff's person, but that "at this point" Plaintiff would be transported to mid-town station and that he would have to wait in handcuffs until a cruiser arrived;

38.     Mr. Moore, concerned that business visitors to the office would see him in handcuffs, asked if he could wait out of view. At this point, Garnand moved him to the SUV in which the Defendants had arrived, placed him in the front seat, where he was held for approximately one and one/half hours before a cruiser arrived and he was transferred to the cruiser and transported to 1100 South Alvernon Way. Plaintiff was confined at that location during which time he was placed in leg irons in addition to the handcuffs. At Defendant's direction, technicians seized Plaintiff's DNA, and Plaintiff submitted to being fingerprinted and his "mug shots" taken. Following this, he was confined for another ½ hour before being released. His DNA was subsequently processed, a profile created, and the profile uploaded to the CODIS, state and local DNA databases;

39.     On June 14, 2017, Garnand swore out a warrant to search the single-family home occupied by Plaintiffs Greg and Patricia Moore, as well as the business office of Greg Moore. The documents were submitted to a Superior Court Judge and the warrant

issued, which bears the designation No. 17 SW 1037.  Defendant Salisbury reviewed the affidavit and approved its submission. A true and accurate, unredacted copy of the search warrant affidavit, and the search warrant obtained therefrom, are attached hereto as Exhibits A and B. The application included misleading and incomplete information about a previous arson that occurred in 2011 at a property located on 3954 East Blacklidge Street, Unit #3 in Tucson. It also falsely claimed that Greg Moore owned that property. Garnand's intent was to mislead the reviewing judge into concluding that it was reasonably probable that Greg Moore had been responsible for the previous arson, thus establishing a "pattern" of arsons;

40.     Before applying for the search warrant, Defendants did not:

a.     defer seeking the warrant to order laboratory comparisons of Mr. Moore's DNA and fingerprints with the specimens and latents secured from the scene on June 8th and review the results nor,

b.     undertake any investigation that would have confirmed that neither Greg Moore nor Patricia Moore had any ownership interest in the Forgeus or Blacklidge properties,

c.     download any data/calls/texts from Mr. Moore's phone that they had seized on June 9th;

d.     interview any witnesses, including, but not limited to, Thomas Alfonso or the witnesses who reported the fire;

41.     After 2:00 p.m. on June 14, 2017, two teams of TPD officers under the command of Defendant Salisbury descended on the home and business. TPD officers

appeared at the door of the Moore home, where Patricia Moore was alone. She went to the door, where she was confronted by four TPD officers, one of whom was dressed in SWAT gear and was carrying an assault rifle. Defendant Garnand commanded this team of officers. Defendant and these officers entered the home, where Mrs. Moore was shown the warrant Garnand had secured; the officers then went through the home, over several hours, systematically searching the dwelling, and seizing documents, computers, and other electronic devices. The property seized was not within the control of Greg Moore, and was outside any reasonable scope of the search that had been authorized; the property was necessary for Mrs. Moore to conduct her independent business activities. Mrs. Moore was confined to the living room of the home during those hours of the search, at most times being monitored by the SWAT officer armed with an assault rifle. Mrs. Moore was terrified, confused, and was not free to move from the place where she had been directed to sit;

42.     During the course of Mrs. Moore's detention, Defendant Garnand informed her that "You know we wouldn't be here if your husband had just talked to us." Garnand then raised his voice to Mrs. Moore, and another officer present, Sgt. Stopka, immediately ushered Garnand to the front patio where they spoke privately for approximately ten (10) minutes. Mrs. Moore noticed a small silver recorder and when she asked, the officer armed with the assault rifle confirmed all conversations were being recorded.

43.     At the same time, the second team of TPD officers, commanded by Defendant Salisbury, put up yellow tape around the entrance to the business, confined the administrator, Guadalupe "Lupita" Bachelier in the office, and systematically searched the

office, seizing thousands of pages of documents, checkbooks, other financial records, computers and other electronic devices, many of which had no bearing on the investigation and were beyond the scope of the authorization of the warrant. A female TPD officer took Bachelier into a small conference room and questioned her there, recording her statement;

44. On or about August 8, 2017, Garnand applied for two subpoenas issued by the Pima County Grand Jury, requesting that Greg Moore's bank, JP Morgan Chase, produce all personal account records and account records for Forgeus Apartments, LLC for the period 2014-2017. Defendant Salisbury reviewed and approved the application. The Grand Jury issued these subpoenas, identified as #268-GJ-1456, and #268-GJ-1457. There was no probable cause for the issuance of the subpoenas, and upon information and belief, the subpoenas were obtained upon presentation of false and misleading information by Garnand, and the omission of material facts;

45. In the weeks following the one year anniversary of the Forgeus fire, the Moores' criminal lawyer made repeated communications with TPD, requesting return of all the business and personal property seized from the Moores. Despite the Department's representations that Garnand would be reviewing the matter to release property, none was forthcoming;

46. In November 2017, Garnand and Salisbury brought in Defendant Radinsky and requested that a financial criminal investigation be opened with Greg and Patricia Moore as the targets. Though Radinsky knew that there was no probable cause, nor even reasonable suspicion that the Moores had engaged in such criminal activity, Radinsky directed Defendant Lopez to open an investigation;

47.     By November 30, 2017, Lopez had opened an investigation, designated as Case No. 1711080410. As a result of Defendants' review of the business records unlawfully seized on June 14, 2017, they identified the Companies/Plaintiffs as those "affiliated" with the Moores. With her superior, Defendant Radinsky, Lopez prepared applications for at least four (4) Grand Jury subpoenas, which were issued by the Grand Jury, bearing the designations: #272-GJ-1190 (ESMJ Partners), #272-GJ-1169 (J C Moore Grandchildren's Trust), #272-GJ-1165 (Southwest Non-Profit Housing, Corp.), #272-GJ-1161 (ESMJ Partners). Defendants knew the applications were defective, in that they lacked probable cause that Plaintiffs had engaged in criminal activity. Defendants made material misrepresentations and omissions in the applications in order to secure the subpoenas;

48.     Defendants had the subpoenas served on banking institutions with which the Companies had accounts, and those institutions produced voluminous financial records of the Companies' activities, which Lopez organized into 41 separate binders;

49.     After analysis of the document production, Lopez and Radinsky were unable to find the Moores had engaged in any financial or other crimes, and, on April 11, 2018, Lopez closed the file;

50.     On August 13, 2018, the Moores filed suit against Defendant Garnand in this Court, the case being given the number Civil Action No. 4:18-cv-00395. The Moores asserted Fourth Amendment search and seizure violations in the applications for, and execution of, Search Warrants 17 SW 1017 and 17 SW 1037;

51.     However, though no crime had been identified, in response to Garnand learning of the civil rights action filed against him, he conferred with Salisbury, Radinsky and Defendant Frie, who had replaced Lopez, and resurrected the closed financial fraud investigation;

52.     The Defendants directed Frie to make contact with the Criminal Investigative Division of the United States Internal Revenue Service, which she did;

53.     Subsequently Garnand was in contact with IRS Agent Robin Newgren, and although in communication with her he learned the IRS considered his information a civil, not criminal nature, he delivered voluminous documents to Newgren in a continuing effort to induce the IRS to open a criminal investigation against the Moores;

54.     In addition to these activities, Garnand confronted Kevin Rousseau, the maintenance contractor working for several landowners, and interrogated him at his home. Following his interview, Mr. Rousseau submitted to a polygraph examination. At that time, Garnand swore out an application for a search warrant, and Tucson Police officers seized Mr. Rousseau's cell phones. Garnand also interviewed the last tenant of the Forgeus property, Ysabella Rongo. All these activities were undertaken in response to the filing of the civil rights action and intended by Garnand to retaliate against the plaintiffs for having filed that case.

55.     On October 9, 2018, and again on December 13, 2018, the Moores submitted public records requests to TPD, seeking disclosure of all records related to Greg or Patricia Moore, and specifically identified the TPD investigation of the 2011 Blacklidge fire because Garnand had made a point to address it in his 17 SW 1037 application, and the

recording of Garnand's telephonic application for 17 SW 1017, made the night of the

Forgeus fire. On March 18, 2019, Greg and Patricia Moore filed a Special Action, Case

No. C20191313, in Superior Court in Pima County to compel Defendant Garnand and the

City, to disclose these specific documents, as well as other documents which were, and still

are, being withheld;

56.      The re-opening of the financial crimes investigation Case No. 1711080410,

the actions taken by the Defendants in that investigation, the referral of the financial crimes

investigation to the IRS, the intimidation of Kevin Rousseau and questioning of the former

Forgeus tenant, were motivated by retaliatory *animus* of Defendants, that the Moores had

filed suit against Defendant Garnand, and additionally, attempted under the vehicle of

Arizona open records law, to secure the documents which could provide relevant evidence

of the Fourth Amendment violations;

57.      Defendants have, subsequent to the IRS referral, continued to engaged in

investigations of the Moores, without reasonable suspicion of the commission of any

crime, in an effort to uncover some offense with which they can bring a charge in order to

intimidate the Moores into dropping their civil rights claims;

58.      All these actions are in retaliation for the protected expression engaged in by

the Moores, as set forth above;

### III.      FIRST CLAIM: CLAIM OF GREG MOORE: SEIZURE AND SEARCH OF JUNE 9, 2017: FOURTH AMENDMENT VIOLATION: GARNAND AND SALISBURY

59.      Plaintiffs reallege Paragraphs 1 through 58 as if fully set forth herein;

60.     As of the aforesaid date, the only evidence that Defendants had on the afternoon of June 8, 2017 regarding Greg Moore was as set forth above;

61.     Garnand and Salisbury, who actively participated in the warrant application, failed to use reasonable professional judgment in seeking it, and lacked probable cause to conclude that Greg Moore had directed, or caused, the arson. Any reasonably well-trained police officer in similar circumstances would have known any warrant issued on the evidence Defendants possessed would be invalid. Defendants, in the application, made material misrepresentations and omissions, to convince the issuing judge that Greg Moore had probably engaged in a pattern of arsons;

62.     Garnand, with Salisbury's participation and ratification, executed the invalid search warrant on Plaintiff's person; in doing so, Defendants seized and arrested Plaintiff without probable cause, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States;

63.     Garnand used excessive force in seizing Plaintiff in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States;

64.     As a direct and proximate result, Plaintiff Greg Moore's privacy was invaded, he suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiff will suffer such injuries and losses in the future;

#### IV.   SECOND CLAIM: CLAIM OF GREG MOORE: FIRST AMENDMENT RETALIATION: GARNAND AND SALISBURY

65.   Plaintiffs reallege Paragraphs 1 through 64 as if fully set forth herein;

66.   Defendant Garnand seized and arrested Plaintiff, with the concurrence and ratification of Salisbury, in retaliation for Plaintiffs' counsel's advice to Mr. Moore to remain silent, and because of Plaintiff's compliance with that advice;

67.   In so doing, Plaintiff engaged in free expression under the First and Fourteenth Amendments to the Constitution of the United States;

68.   Defendants' actions, as set forth above, violated Plaintiff's right to free expression;

69.   As a direct and proximate result, Plaintiff Greg Moore's privacy was invaded, he suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiff will suffer such injuries and losses in the future;

#### V.   THIRD CLAIM: CLAIM OF GREG AND PATRICIA MOORE: SEARCHES AND SEIZURES OF JUNE 14, 2017: FOURTH AMENDMENT VIOLATIONS: GARNAND AND SALISBURY

70.   Plaintiffs reallege Paragraphs 1 through 69 as if fully set forth herein;

71.   Defendant Garnand, with the participation and ratification of Salisbury, executed and submitted Exhibit A for approval on June 14, 2017 and, in doing so, failed to use reasonable professional judgment in seeking it, and lacked probable cause to conclude that Greg Moore or Patricia Moore had directed, or caused, the arson. Any reasonably well-trained police officer in similar circumstances would have known any

warrant issued on the evidence Defendants possessed would be invalid. Further, Defendants lacked any evidence that anyone occupying the Moore home was engaged in criminal activity or that any criminal activity had been committed from the home. Further, the application contained material misrepresentations and omissions as addressed above;

72.     Defendants secured and executed the invalid search warrant, Exhibit B, on Plaintiffs' home and business; in doing so, Defendants searched the locations and seized property without probable cause, and beyond the scope of the warrant, in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States;

73.     As a direct and proximate result, Plaintiffs Greg Moore and Patricia Moore's privacy was invaded, they suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiffs will suffer such injuries and losses in the future;

## VI.     FOURTH CLAIM: CLAIM OF PATRICIA MOORE AGAINST DEFENDANT GARNAND: FOURTH AMENDMENT VIOLATION: ARREST

74.     Plaintiffs reallege Paragraphs 1 through 73 as if fully set forth herein;

75.     The detention of Mrs. Moore escalated into a seizure and arrest as a result of actions taken by Garnand and the officers under his command;

76.     Garnand violated Plaintiff's right to liberty under the Fourth and Fourteenth Amendments to the Constitution of the United States:

77.     As a direct and proximate result, Plaintiff Patricia Moore's privacy was invaded, she suffered extreme emotional distress, humiliation, loss of self-esteem, physical

pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiff will suffer such injuries and losses in the future;

## VII.   FIFTH CLAIM: CLAIM OF GREG AND PATRICIA MOORE: ACTIONS OF JUNE 14, 2017: FIRST AMENDMENT RETALIATION: GARNAND AND SALISBURY

78.     Plaintiffs reallege Paragraphs 1 through 77 as if fully set forth herein;

79.     Defendants swore out and executed the warrant, Exhibit B, hereto, and engaged in the other actions against Plaintiffs June 14, 2017, as Defendant Garnand so informed Patricia Moore, in retaliation for Plaintiff Greg Moore's having engaged in expression protected under the First and Fourteenth Amendments to the Constitution of the United States as set forth above;

80.     Defendants violated the rights of both Plaintiffs under the First and Fourteenth Amendments;

81.     As a direct and proximate result, Plaintiffs Greg Moore and Patricia Moore's privacy was invaded, they suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiffs will suffer such injuries and losses in the future;

## VIII.   SIXTH CLAIM: FOURTH AMENDMENT VIOLATION: SECURING GRAND JURY SUBPOENA ON GREG MOORE'S PERSONAL FINANCIAL INFORMATION: GARNAND AND SALISBURY

82.     Plaintiffs reallege Paragraphs 1 through 81 as if fully set forth herein;

83.     Defendant Garnand and Salisbury's application to secure a Grand Jury subpoena for Greg Moore's personal financial records was made in the absence of probable

19

cause. He secured the subpoena and it was served and personal financial information disclosed;

84.     As a direct and proximate result, Plaintiff Greg Moore's privacy was invaded, he suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiff will suffer such injuries and losses in the future;

## IX.     SEVENTH CLAIM: FIRST AMENDMENT RETALIATION IN APPLICATION FOR GRAND JURY SUBPOENA ON GREG MOORE: GARNAND AND SALISBURY

85.     Plaintiffs reallege Paragraphs 1 through 84 as if fully set forth herein;

86.     Defendant's application for the Grand Jury subpoena to obtain Greg Moore's personal financial information was motivated by retaliatory *animus* against him for his having engaged in protected expression as set forth above. The subpoena was issued and served, and personal information disclosed;

87.     Defendants violated the rights of Greg Moore under the First and Fourteenth Amendments;

88.     As a direct and proximate result, Plaintiff Greg Moore's privacy was invaded, he suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiff will suffer such injuries and losses in the future;

## X.     EIGHTH CLAIM: CLAIM OF GREG AND PATRICIA MOORE: FIRST AMENDMENT RETALIATION: ALL DEFENDANTS

89.     Plaintiffs reallege Paragraphs 1 through 88 as if fully set forth herein;

90.     The actions of all Defendants as addressed above, in opening a financial fraud investigation of the Moores and any "affiliated" companies, in applying for the four (4) Grand Jury subpoenas on the Company Entities, in the continuing efforts to induce the IRS to open a criminal investigation against Plaintiffs Greg and Patricia Moore, and in continuing to investigate the Plaintiffs without reasonable suspicion that any crime has been committed, these actions are motivated by retaliatory *animus* because of Greg Moore's protected expression as described above on June 9, 2017, because of the Plaintiff's filing the civil rights action described above, and because of Plaintiff's requests for disclosure of public records of the investigative activities of Defendants;

91.     Defendants violated the rights of Greg Moore and Patricia Moore under the First and Fourteenth Amendments;

92.     As a direct and proximate result, Plaintiffs Greg Moore and Patricia Moore's privacy was invaded, they suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiffs will suffer such injuries and losses in the future;

**XI.     NINTH CLAIM: CLAIM OF ALL PLAINTIFFS: FOURTH AMENDMENT VIOLATIONS: ALL DEFENDANTS**

93.     Plaintiffs reallege Paragraphs 1 through 92 as if fully set forth herein;

94.     The Defendants' applications for the Grand Jury subpoenas, lacking probable cause, and made with material misrepresentations and omissions, and the issuance and service of said subpoenas, violated the Fourth Amendment rights of all Plaintiffs to be secure against unlawful searches and seizures;

95.     As a direct and proximate result, Plaintiffs Greg Moore and Patricia Moore's privacy was invaded, they suffered extreme emotional distress, humiliation, loss of self-esteem, physical pain and suffering; incurred expense; including attorney fees and other expenses. Plaintiffs will suffer such injuries and losses in the future. Further, the private business records and information of the Company Entities was broken, and Defendants' further distribution to the IRS of such private business information was harmful;

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1.     Under all claims, compensatory damages in such amounts as the jury deems just;

2.     Under all claims, special damages in such amounts as the jury deems just;

3.     Awards of punitive damages in such amounts as the jury deems just;

4.     An award of reasonable attorney fees and costs pursuant to 42 U.S.C. Section 1988;

5.     Interest and costs of the action;

6.     Pursuant to Fed. R. Civ. P. 65, specifically, Rule 65(d)(2)(B), an order directing Defendants and all parties who participated in the processing, uploading, and continued use of Plaintiff Greg Moore's DNA CODIS profile, that the original DNA samples, all profiles, and all records related to Plaintiff's DNA be destroyed and that the profile be taken down from any database upon which it currently appears;

7.     An order that Plaintiff Greg Moore's fingerprints and mug shots, and all copies thereof, in any location, be destroyed; and that the records of his arrest/detention be destroyed;

8.     An order directing the immediate return of all property seized, including the 41-plus binders of records of the Plaintiffs' personal and business information, and deletion from electronic records of any such information;

9.     An order directing Defendants to notify the United States Internal Revenue Service of the judgment in this case, and requesting that the agency destroy and delete all records and information received from the Defendants as being unlawfully seized;

10.     Such other relief as the Court deems just.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
9040 North Placita Verde
Tucson, Arizona 85704
Telephone: 888-318-0075
mike@mgmoorelaw.com

Trial Counsel for Plaintiffs

**JURY DEMAND**

Plaintiffs demand that all issues be tried by a jury of eight (8) persons.

/s/ Michael Garth Moore