**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Greg Moore; et al., | No. CV 19-00290 TUC RM (LAB) |
| Plaintiffs, | **ORDER** |
| vs. | |
| Sean Garnand; et al., | |
| Defendants. | |

Pending before the court is a motion, filed by the defendants on October 6, 2020, to (1) quash the plaintiffs' deposition subpoenas served on Edwin Arnaud and Matthew Stoner, (2) excuse the defendants from responding to the plaintiffs' Fifth Request for Production, and (3) require the plaintiffs to obtain court permission prior to issuing subsequent discovery. (Doc. 234)  The plaintiffs filed a response on October 20, 2020.  (Doc. 236)  The defendants filed a reply on October 27, 2020.  (Doc. 238)

The plaintiffs in this action claim their constitutional rights were violated when the defendants executed search warrants in connection with a Tucson Police Department arson investigation into the destruction of the Forgeus Apartments on June 8, 2017.  (Doc. 1)  The plaintiffs bring this action pursuant to 42 U.S.C. § 1983.  (Doc. 1, p. 4)  The first warrant, for DNA and other personal effects, was executed on June 9, 2017.  (Doc. 1, pp. 8-9)  The second warrant, for financial documents, was executed on June 14, 2017.  (Doc. 1, pp. 9-11) The defendants apparently believe that the plaintiffs may be responsible for the fire that destroyed these apartments.  (Doc. 1)  They further believe that the fire that destroyed the

Forgeus Apartments displayed similarities to a fire that destroyed an apartment on Blacklidge drive in 2011.  (Doc. 1, p. 10)  The investigation into the Forgeus fire is ongoing.

In the pending motion, the defendants first move, pursuant to Fed.R.Civ.P. 45(d)(3)(A)(iii) and Fed.R.Civ.P. 26(c)(1), for an order quashing the deposition subpoenas issued for Tucson Police Department employee Edwin Arnaud and Tucson Police Officer Matthew Stoner.  *See* (Doc. 234-2, pp. 16, 19)  Arnaud apparently "processed Greg Moore upon his arrival at the police station on June 9, 2017" when his fingerprints and DNA were taken pursuant to the first search warrant.  (Doc. 234, p. 6)  Stoner participated in the execution of the second search warrant at the Moore residence.  *Id.*

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Rule 45 reads in pertinent part as follows:

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> \*   \*   \*
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies . . .

Fed. R. Civ. P. 45(d)(3)(A).  Pursuant to Rule 26(c):

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery . . . .

1  Fed.R.Civ.P. 26(c)(1). Ordinarily, "[t]he burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004), *cert. denied*, 544 U.S. 905 (2005).

The defendants apparently concede that Arnaud and Stoner have discoverable information. They view as "fair game" Arnaud's "training, background and experience; TPD protocol for processing a detainee or arrestee for fingerprints, photographs, and DNA; the substation set-up; and his interactions with and observations of Greg Moore on June 9, 2017." (Doc. 234, pp. 6-7) They also view as "fair game" questions about Stoner's "training, background and experience; TPD protocol for executing a search warrant; the fact of and rationale for his sweep of the Cobblestone residence prior to the search beginning on June 14, 2017; his interactions with, and observations of Patricia Moore on June 14, 2017; and his handling of any weapon on June 14, 2017 in connection with the Cobblestone search warrant." *Id.*

Prior to the deposition, the defendants' counsel attempted to get assurances from the plaintiff's counsel that he would not ask questions that fall within the Law Enforcement Investigatory Privilege (LEIP), which this court has already held applicable to this case. (Docs. 74, 113) The plaintiff's counsel refused to provide these assurances stating that "I disagree regarding your limitations to my areas of questioning. I cannot predict what direction the depositions will take depending on the answers I receive." (Doc. 234, p. 8) He also seemed to believe that the investigation that Arnaud performed on the night of June 8, 2017 "is central to the activities of TPD . . . with regard to the issuance of the SW17SW1017 [the first search warrant]." *Id.* The defendants, however, pointed out that Arnaud "arrived at the Forgeus fire scene on June 8, 2017 at 2013 hours – just over an hour *after* the search warrant to enter, search and seize evidence from the scene was obtained by Det. Garnand." *Id.* (emphasis in original) It therefore seems unlikely that his investigations would be relevant on the issue as to whether the first search warrant was supported by probable cause. Moreover, testimony about his investigations into the cause of the fire fall within the LEIP.

In an apparent attempt to reach a compromise, the plaintiffs' counsel subsequently informed the defendants' counsel that he would ask questions about those topics that both parties agreed were relevant and discoverable and "defer questioning of these two witnesses as to any area of testimony that is covered by LE[I]P . . . ." (Doc. 236, pp. 10-11) He agreed that if he asked a question that the defendants' counsel believed was privileged under the LEIP, then the defendants' counsel could interpose the appropriate objection and instruct the witness not to answer the question. *Id.* The defendants apparently found this proposal too burdensome and filed the pending motion to quash the deposition subpoenas.

The court finds the plaintiffs' counsel's proposal to be reasonable. It appears to the court that Arnaud and Stoner have discoverable information. And while the plaintiffs' counsel's questions might stray into areas that are privileged under the LEIP, the defendants' counsel should be able to preserve the LEIP by interposing the appropriate objection at the appropriate time. Accordingly, the defendants' motion to quash the deposition subpoenas for Arnaud and Stoner will be denied.

The defendants further move that this court excuse them from responding to the plaintiffs' Fifth Request for Production (RFP). (Doc. 234); (Doc. 234-2, p. 11) In that RFP, the plaintiffs instruct the defendant Sean Garnand to "produce . . . all tangible items seized from the Forgeus property on the night of June 8, 2017, for inspection and imaging." (Doc. 234-2, p. 13) Apparently, the defendants have already disclosed to the plaintiffs photographs of some of these items such as a cigarette butt, an STP bottle, and a melted orange bucket. (Doc. 236, p. 8) The plaintiffs also seek the "names and individual identifiers for all Terminal and Operator codes, listed in the event chronologies and the unit histories, produced as DEFS 002-0012, DEF 316-349, and TPDPRR 1331-1332." (Doc. 234-2, p. 13)

The defendants argue that evidence collected at the scene such as the cigarette butt and the STP can "could only pertain to Greg Moore's criminal defense . . . [and] has no relevance to the Moore's civil claims." (Doc. 234, p. 5) Similarly, they maintain that the request for "names and individual identifiers" is not calculated to uncover relevant

1  information and "can only be read as seeking to create a list of potential witnesses to assist
2  Greg Moore's criminal defense." *Id.*

3  In their response, the plaintiffs assert that the tangible items are relevant because they
4  might provide clues to the true arsonist.  They maintain that markings on the STP bottle
5  could have provided clues that would have enabled the defendant Garnand to find out who
6  purchased it.  (Doc. 236, pp. 6-8)  They further suggest that these items might be linked to
7  squatters who were previously evicted from the Blacklidge property.  (Doc. 236, pp. 6-8)
8  The plaintiffs argue that these items are relevant to the First Claim in the Complaint, that the
9  defendants engaged in judicial deception to secure the first warrant, 17SW1017, and the
10 Eighth Claim, that the defendant Garnand reopened a closed investigation in retaliation for
11 the plaintiff's first amendment activities.  (Doc. 236, p. 4)

12 The court is not convinced that the tangible items are relevant on the issue of judicial
13 deception or the issue of retaliation.  In order to prove deception or retaliation, the plaintiffs
14 would need to prove two things.  First, they would have to show that the tangible items
15 contained clues like fingerprints or sales tags.  Second, they would have to show that the
16 defendants realized the evidentiary value of the clues, intentionally decided to ignore them,
17 and pursued an unreasonable investigation of the plaintiffs.  The defendants conduct of the
18 arson investigation, however, is currently subject to the LEIP and is not discoverable.  Until
19 and unless the LEIP is lifted, it does not appear that inspection of tangible items would yield
20 relevant information.  The plaintiffs did not address the defendants' argument that the
21 "names and individual identifiers for all Terminal and Operator codes" are not relevant.
22 Accordingly, the court will grant the motion for a protective order as it pertains to the
23 plaintiff's Fifth Request for Production.

24 Finally, the defendants move for an order requiring the plaintiffs to obtain court
25 permission prior to issuing subsequent discovery.  (Doc. 234)  The defendants cite a number
26 of cases in support of their argument that abuse of discovery can result in sanctions but none
27 for the proposition that this court may act as a discovery gatekeeper.  Assuming without
28

1  deciding that the court could do so, the court finds that there is no justification for imposing
2  this requirement at present.  While some of the plaintiff's discovery requests have been
3  denied by this court, that has not been the case with all of them.  The court finds, for
4  example, that the plaintiff's deposition subpoenas for Arnaud and Stoner were properly
5  issued.  The defendants' motion for an order precluding the plaintiffs from obtaining
6  discovery without prior permission from the court will be denied.

8  IT IS ORDERED that the motion, filed by the defendants on October 6, 2020, to (1)
9  quash the plaintiffs' deposition subpoenas served on Edwin Arnaud and Matthew Stoner, (2)
10 excuse the defendants from responding to the plaintiffs' Fifth Request for Production, and
11 (3) require the plaintiffs to obtain court permission prior to issuing subsequent discovery is
12 GRANTED IN PART.  (Doc. 234)  The defendants are excused from responding to the
13 plaintiffs' Fifth Request for Production.  The remainder of the motion is denied.

15  DATED this 12th day of February, 2021.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge