Michael Garth Moore (#023742)
6336 N. Oracle Rd., Suite 326, #119
Tucson, Arizona 85704
Tel: 520-437-9440
Email: mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Greg Moore, et al. <br><br> Plaintiffs, <br><br> v. <br><br> Sean Garnand, et al. <br><br> Defendants. | No. 4:19-cv-00290-RM (MAA) <br><br> **MOTION OF PLAINTIFFS MOTION FOR SANCTIONS FOR DEFENDANTS' COUNSEL'S ACTIONS AT DEPOSITION OF DEFENDANT SEAN GARNAND** |

Now come Plaintiffs, pursuant to Fed.R.Civ.Pro. 30(c)(2), 30(d)(3)(C) and 28 U.S.C. §1927, and move the Court for an Order issuing sanctions against Defendants' counsel Sarah Pace, and, individually, Defendant Sean Garnand, for conduct obstructing the orderly deposition of Defendant Garnand, which commenced on March 28, 2024. Plaintiffs also seek an Order granting Plaintiffs the costs, including attorney fees, of the Motion.

## I.   DISCUSSION OF AUTHORITIES

Plaintiffs set out the authorities against which Defendants' counsel and Defendant Garnand's own conduct must be measured in the Motion Doc. 432, and also in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Terminate the Deposition of Lisa

Miller, Doc. 448. This Court, measuring that conduct against that of Defendants' counsel and Defendant himself as set forth *infra*, can only conclude that the actions are obstructive, and order sanctions.

The directions not to answer – and the refusal to answer – are facial violations of Rule 30(b) and need no further explication.[1]

As to the "Rambo" litigation strategy taken in this, and every other deposition of her clients, Ms. Pace's conduct is uniformly condemned by the authorities. Plaintiffs do not contend that Rule 30(c)(2) prevents Defendants' counsel from stating the basis for her objection—indeed, the rule requires it. However,

> [r]equiring lawyers to state the basis for their objections is not the same thing as requiring "speaking objections" in which lawyers amplify or argue the basis for their objections. For example, "Objection, hearsay" is a proper objection. By contrast, "Objection, the last assertion by Mr. Jones was an out-of-court statement by Ms. Day, said in the hotel room, that Mr. Jones allegedly heard, that he never testified to in a deposition, and that is now being offered for the truth of Ms. Day's statement" is an improper speaking objection.

*Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs.*, 299 F.R.D. 595, 602 (N.D. Iowa 2014) *rev'd on other grounds sub nom. Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936 (8th Cir. 2015).

*Abbott Labs* is the touchstone in this area.

Speaking objections are forbidden by Rule 30(c)(2) because they can affect the way the witness answers the question. *Id.* at 604 ("[Rule 30(c)(2) mandates what should already be obvious - lawyers may not comment on questions in any way that might affect

---

[1] One observation here. Right out of the box, Defendants' counsel directed Garnand not to answer his date of birth, his age or whether he had any family members in law enforcement. Exhibit A, Garnand deposition, 5:23-7:24; 8:18-11:18. Her justification for the former objection was that such information is confidential under Arizona law. That may be, counsel did not cite any statute – but Garnand retired from law enforcement a year ago. He is no longer a police officer, and no longer is his personal information – if it ever was – cloaked in secrecy. The conduct right at the commencement set the standard of conduct by the defense for the entirety of the deposition.

2

the witness's answer"). As another court stated, "It should go without saying that lawyers are strictly prohibited from making any comments, either on or off the record, which might suggest or limit a witness's answer to an unobjectionable question. *Hall v. Clifton Precision*, 150 F.R.D. 525, 530–31 (E.D. Pa. 1993).

In commencing its analysis of the motion for sanctions before it, the *Abbott Labs* court expressed the extraordinary frustration that Rambo litigation strategy engenders:

> Discovery—a process intended to facilitate the free flow of information between parties—is now too often mired in obstructionism. Today's "litigators" are quick to dispute discovery requests, slow to produce information, and all-too-eager to object at every stage of the process. They often object using boilerplate language containing every objection imaginable, despite the fact that courts have resoundingly disapproved of such boilerplate objections. Some litigators do this to grandstand for their client, to intentionally obstruct the flow of clearly discoverable information, to try and win a war of attrition, or to intimidate and harass the opposing party. Others do it simply because it's how they were taught. As my distinguished colleague and renowned expert on civil procedure Judge Paul Grimm of the District of Maryland has written: "It would appear that there is something in the DNA of the American civil justice system that resists cooperation during discovery." Whatever the reason, obstructionist discovery conduct is born of a warped view of zealous advocacy, often formed by insecurities and fear of the truth. This conduct fuels the astronomically costly litigation industry at the expense of "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1. It persists because most litigators and a few real trial lawyers—even very good ones, like the lawyers in this case—have come to accept it as part of the routine chicanery of federal discovery practice.

*Sec. Nat'l Bank of Sioux City v. Abbott Labs.*, *supra,* 299 F.R.D. 596-597 (citations omitted).

District Judge Bennett went on to issue a stark warning:

> But the litigators and trial lawyers do not deserve all the blame for obstructionist discovery conduct because judges so often ignore this conduct, and by doing so we reinforce—even incentivize—obstructionist tactics…. Unless judges impose serious adverse consequences, like court-imposed sanctions, litigators' conditional reflexes will persist. The point of court-imposed sanctions is to stop reinforcing winning through obstruction.

3

*Id.,* at 598 (citations omitted).

The *Abbott Labs* decision arose from Judge Bennett's trying a products liability case, and in that trial, having reviewed numerous depositions, *sua sponte* ordering defendants' counsel to brief why sanctions were not appropriate. He concluded they were, and stated that

> In particular, Counsel engaged in three broad categories of improper conduct. First, Counsel interposed an astounding number of "form" objections, many of which stated no recognized basis for objection. Second, Counsel repeatedly objected and interjected in ways that coached the witness to give a particular answer or to unnecessarily quibble with the examiner. Finally, Counsel excessively interrupted the depositions that Counsel defended, frustrating and delaying the fair examination of witnesses.

*Id.,* at 600.

Plaintiffs commend to this Court's attention the entirety of Judge Barrett's thoughtful and thorough analysis of the Rule violations which required sanctions.

We address specifically that conduct which was mirrored by Defendants' counsel in the instant case. In addressing the "form" objections, the court noted that "In the two depositions I asked Counsel to review in my order to show cause, Counsel objected to the "form" of the examiner's question at least 115 times. That means that Counsel's 'form' objections can be found on roughly 50% of the pages of both the Barrett-Reis and Bottock depositions. *Id.* After completely deconstructing the support for vacuous "form" objections, *id.,* 601-604, Judge Barrett found that these hollow insertions into the deposition, combined, as in the instant case with "explanations" that constituted improper speaking and coaching, went on to state that

4

> Beyond the "form" objections and witness coaching, Counsel's interruptions while defending depositions were grossly excessive. Counsel's name appears at least 92 times in the transcript of the Barrett-Reis deposition (about once per page), and 381 times in the transcript of the Bottock deposition (approaching three times per page). Counsel's name appears with similar frequency in the other depositions that Counsel defended.
>
> *Id.,* at 609.

Judge Barrett concluded, "By interposing many unnecessary comments, clarifications, and objections, Counsel impeded, delayed, and frustrated the fair examination of witnesses during the depositions Counsel defended. Thus, sanctions are independently appropriate based on Counsel's excessive interruptions." *Id.*

## II. RELEVANCE OF THE INQUIRY

Plaintiffs have briefed this Court on the relevance of questioning directed to the circumstances of the securing of search warrants in claims of judicial deception in their pending Motion to Compel Discovery and For Sanctions, Doc. 432. That law will not be rehashed here.

However, the Court should be aware, as well, that Plaintiffs assert 4th Amendment violations in the absence of probable cause for the entirety and, alternatively, specific searches of each warrant, particularly the omnibus 17SW1037. These include, for example, the authorization to search and seize vehicles used by Greg Moore's unidentified "associates"; to search and seize, without limit of time or connection with an arson, every financial document located in the offices at Speedway, or at the residence on Cobblestone; to search and seize – and forensically analyze -- without limit any computer or electronic device found at Cobblestone; to search and seize at Cobblestone itself.

5

Plaintiffs also assert that 17SW1037 was overbroad and lacked particularity for the authorized searches and seizures – which brings into play the execution of the search warrant at Cobblestone and the Speedway offices.

Key to the Defendants' securing both warrants were the representations that Greg Moore owned both the Blacklidge and Forgeus properties. These allegations were included, of course, to support the inference that he had torched them in order to profit. Garnand claimed, in the application for 17SE1037, the omnibus warrant, that he was investigating not only arson, but the crime of fraudulent schemes and artifices. He highlighted that an insurance claim had been made for the Blacklidge fire and that had been under investigation by the carrier. Hence, *any* evidence which would tend to show Garnand recklessly or intentionally included these allegations – which were, in fact, not true – in the applications goes to the heart of the judicial deception claims.

What was stated in *United States v. Rettig* is still good law today:

> In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and *the manner of its execution.*

*United States v. Rettig*, 589 F. 2d 418, 423 (9th Cir. 1978), citing *Vonder Ahe v. Howland*, 508 F.2d 364 (9th Cir. 1975). *Cf. United States v. Dubrofsky*, 581 F.2d 208 (9th Cir. 1978) (emphasis added).

In 2002, the Court augmented this statement by the teaching that

> Whether a search exceeds the scope of a search warrant is an issue we determine through an objective assessment of *the circumstances surrounding the issuance of the warrant*, the contents of the search warrant, and *the circumstances of the search.*

*United States v. Hitchcock,* 286 F.3d 1064, 1071 (9th Cir. 2002) (emphasis added).

6

Hence, *every fact* that throws light on the circumstances under which Defendants secured both warrants, and the entirety of facts surrounding the execution of the warrants, is relevant and discoverable. Moreover, facts which could bear on the credibility of Defendants – such as personal and profession history – are also discoverable.

It is precisely the inquiries into this relevant evidence that Defendants' counsel, and Defendant himself, blocked.

### III. THE DEPOSITION AND DEFENSE COUNSEL'S CONDUCT

Defendant Garnand's deposition consumed six (6) hours and fifty-nine (59) minutes. In the course of the testimony, commencing from the very beginning, Defendants' counsel directed the Defendant to *not answer* multiple questions, with no ground except the "ground" that the question was beyond the scope and that it was "harassment" of the. Defendant Garnand also took it upon himself to unilaterally refuse to answer questions. He did this several times – both at the beginning in refusing to give his age or date of birth, but more substantively, when he was questioned about his actions on the night of June 8, 2017. Garnand, 188:20-191:14; 192:22-193:22 (refusing to answer regarding a checkbook of the previous tenant, found in a trash can, which identified the owner of the property as "Forgeus Apartments, LLC."). Garnand, at this point, affirmed that he would answer no questions about his investigation that night unless *he* decided the question was relevant.

Defense counsel's directions not to answer, and Garnand's own refusals substantially hampered Plaintiffs from securing evidence which could be impeaching,

7

but, more important, evidence of Garnand's investigation the night of June 8, 2017 – which formed the foundation of the applications for the search warrants 17SW1017 and 17 SW 1037 upon which the Plaintiffs' claims rest.

Defendants' counsel also made a stunning *504* objections in 221 pages of testimony. This constituted an astounding 96% of all the pages of the deposition on which questions were asked.

Of those, 360 objections were to the "form" of the question, without any further elaboration; 133 objections asserted "Rule 26(b)(1)," also without any elaboration. Counsel made "foundation" objections, and "vagueness" objections. An example of the hundreds of such objections was Ms. Pace's objections as to "form" when the Defendant was being questioned about his actions on the morning of June 9, 2017, when he brought in at least three patrol units in his stop of an SUV driven by Tom Alfonso, who had been at Forgeus that morning to assess the cost of repairs. After multiple objections interrupting the questioning of Garnand's actions, the following occurred:

> MS. PACE:  Mike, can I -- can I just put a standing 26(b)(1) for everything having to do with the morning of June 9th?
>
> MR. MOORE:  I've -- that's fine.
>
> MS. PACE:  Okay.
>
> MR. MOORE:  Whatever you want to do is fine with me.
>
> MS. PACE:  Okay.  It's standing.
>
>     Garnand, 42:7-14.

8

Less than two (2) pages later, as the examination continued as to that morning's actions, Defendants' counsel began objecting again. Her justification: "I can't resist, Michael, so I'm going to have to say 26(b)(1) some more. So 26(b)(1)." Garnand, 44:14-15. And she did – again and again. At page 59, the following occurred:

> Q. (BY MR. MOORE) Okay. So, when people are pulled over from traffic violations, there's a process where the officer goes up to the car and says, "Give me your registration and your license." That's the standard procedure, isn't it?
>
> MS. PACE: 26(b)(1), form.
>
> A. Yes.
>
> Q. (BY MR. MOORE) Did that happen in this case?
>
> MS. PACE: 26(b)(1).
>
> MR. MOORE: You have a standing objection.
>
> MS. PACE: I know, but it's so obnoxious.
>
> MR. MOORE: You can't stop, right?
>
> MS. PACE: I can't.
>
> Garnand, 58:25-59:12.

These objections came even more fast and furious every time the Defendant was pressed about his inquiries as to who actually owned the property. Between Defendants' dodging and Ms. Pace's interjections, more time was wasted. Garnand, 68:12-72:18.

Counsel's obstruction reached its apogee when Garnand was being questioned about training and policy as to documentation of his activities. First Garnand gave non-responsive answers, then interjected a claim that he and the undersigned had met years

9

ago, and then when the undersigned tried to bring the examination back on track, Ms. Pace inserted her own account of the alleged meeting, dragging out more lines and pages. Garnand, 102:19-105:10.

Defendants' counsel engaged repeatedly in speaking objections clearly intended to further delay and also to coach the Defendant as to "correct" answers to give. These were particularly obvious in the performance when Garnand was asked about the checkbook collected the night of June 8, 2017. Garnand, 188:20-191:14; 192:22-193:22. When Garnand was being questioned about his actions and words on the afternoon of June 9, 2017, when Garnand seized, handcuffed and arrested Greg Moore, Ms. Pace repeatedly interjected about a recording, and asking why it wasn't being played for the Defendant, a "helpful" suggesting to Defedant – until he admitted that he had turned off his recorder at the critical moment in the event. Id., 113:14-115:24.

This was especially evident whenever the Defendant was questioned about policies or training. Ms. Pace repeatedly, almost to every question, made the following speaking objection:

> Q: So let me ask you this then.  Do you agree with me that an arrest occurs when a person is taken into custody, is not free to leave for the purpose of criminal prosecution or interrogation?  Do you agree with that?
>
> MS. PACE:  Object to the form, calls for a legal conclusion.  And once again, you're reading from some random piece of paper that you refuse to show the witness.

Garnand, 21:11-19.

This performance became tedious, but, more important, it took precious time from the legitimate examination of the Defendant.

Counsel's objections, and the Defendants' constant deflections of questions with non-responsive answers, which forced the undersigned to repeat the same question multiple times, obstructed Plaintiffs' efforts to secure the discovery necessary to support the claims.

At 4:45 p.m. the Arizona Bar office where the deposition was being held was about to close, Plaintiffs sought agreement from Defendant's counsel to suspend the deposition and continue it by agreement, also, to allow Plaintiffs to move this Court for an order regarding the conduct of counsel and the witness. This was refused.

///

## IV.   APPROPRIATE SANCTIONS

Against this record, the sanctionable conduct of Defendants' counsel becomes stark. This Court can take notice of the excessive number of objections and disruptions in the other two depositions currently subject to motion: Arnaud and Miller. Many of the objections and interjections display an attitude of superiority and are personally demeaning. This is also typical of her conduct in the other depositions. Mr. and Mrs. Moore can justifiably be charged for the time to depose Defendant Garnand and the other clients of Defendants' counsel. They should not be charged for the time taken by Ms. Pace to testify herself.

"What constitutes reasonable expenses and appropriate sanctions is a matter for the Court's discretion." *Kent v. Cummings, No*. CV-09-1616-PHX-JWS, 2010 WL 2643538, at *7 (D. Ariz. June 29, 2010) (quoting *Jadwin v. Cty. of Kern*, 2008 WL 2064514, * 2 (E.D. Cal. 2008)). "Such sanctions are properly imposed to deter ongoing

11

and subsequent discovery abuses." *Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2018).

Plaintiffs submit the following are appropriate sanctions targeted to deter the discovery abuses engaged in by Defendants' counsel and Defendant Garnand. First, the Court should order that Defendant Garnand sit for the completion of his deposition at a time and place convenient to Plaintiffs and their lawyer. Second, the Court should order that the length of the conclusion of the deposition be extended by one and one-half (1 ½) hours, for a total time of eight and one half (8 ½) hours. Third, Defendant Garnand and his counsel be held to jointly and severally pay the reasonable fees and costs of Plaintiffs in (1) the conduct of the original session, including costs and fees of Plaintiffs' counsel and the court reporter and videographer; (2) the bringing of this Motion; and (3) the costs and fees, including court reporter, videographer, and attorney fees of concluding the deposition. Fourth, the Court should order that the Defendant must answer *every question put to him*, with the exception of any question the answer to which would disclosed information covered by attorney-client privilege, with the immediate sanction of contempt for violation. Finally, the Court should order Defendants' counsel that any further objections as to "form," foundation," or "Rule 26(b)(1)" are forbidden, subject to a motion for contempt upon any violation.

RESPECTFULLY SUBMITTED this 16th day of April 2024.

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Rd, Ste 326, #119
Tucson, AZ 85704
Attorneys for Plaintiffs

12

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the District of Arizona by using the CM/ECF System. Participants in the case who are registered CM/ECF uses will be served by the CM/ECF system:

/s/ Michael Garth Moore

**MICHAEL G. RANKIN**
**CITY ATTORNEY**

Dennis McLaughlin
Sarah Pace
Principal Assistant City Attorneys
P.O. Box 27210
Tucson, AZ 85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803

*Attorneys for Defendants Sean Garnand and Dain Salisbury*

*/s/ mgm*